Maurice SHELTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 43358.

Court of Criminal Appeals of Texas.

Dec. 31, 1970.

Rehearing Denied Feb. 10, 1971.

Marion T. Carson, San Antonio, for appellant.

Ted Butler, Dist. Atty., Earl Hill, Charles Campion, and Sparta Bitsis, Asst.

Dist. Attys., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

This is an appeal from a conviction for murder wherein the penalty was assessed at 50 years' confinement in the Texas Department of Corrections.

The sufficiency of the evidence is not challenged. Suffice it to say the evidence shows that on December 25, 1968, the appellant shot and killed Howard Williams who was employed at the Sat El Lite Club in San Antonio "to keep peace." Appellant and two companions, who had been drinking, appeared at the club or lounge and failed or refused to pay the 50 cents cover charge and asked to get in "free" since it was Christmas. The deceased told the appellant to leave and later shoved him out the front door. Appellant returned within 15 or 20 minutes with a .22 caliber rifle, a struggle ensued and Williams was shot and killed.

■ In his first ground of error appellant complains of the court's action in overruling his motion in limine to prevent the State from alluding to the fact that the deceased was a "special deputy sheriff, a police officer or any type of law enforcement officer," and to limit any testimony as to the deceased's right to carry arms while engaged as a bouncer in an establishment where alcoholic beverages were served and consumed.

It appears to be appellant's contention that the deceased was a "special deputy constable" and was not therefore a duly authorized and regular peace officer.

Although the trial judge overruled the motion he instructed the witnesses not to refer to or mention that the deceased was a peace officer until the same had been established.

Appellant complains that several times during the testimony there were references made to the fact that the deceased was a peace officer or references which left that impression. While most of such testimony was admitted over objection no further relief in the form of a jury instruction to disregard or a motion for a mistrial was made.

No testimony was offered in support of the motion in limine nor were any of the informal bills of exception perfected to show that the deceased was in fact a "special deputy constable" as claimed. Under these circumstances, nothing is presented for review.

■ Next, appellant contends the court erred in refusing to grant his motion to have an investigator appointed to assist his "court appointed appellate counsel." See Article 26.05, Vernon's Ann.C.C.P. After judgment appellant filed a pauper's oath and his previously retained trial counsel was appointed to represent him. His subsequently filed motion to appoint an investigator was denied as well as his motion for new trial. After an examination of the record we perceive no error and conclude that the trial judge did not abuse his discretion in refusing to appoint an investigator at the time requested. Certainly an indigent appellant is entitled to court appointed counsel on appeal and a record free of cost, but we know of no constitutional requirement that he also is entitled to a court appointed investigator on appeal or for the purpose of a motion for new trial. See Chamberlain v. State, Tex.Cr. App., 453 S.W.2d 490.

■ Lastly, appellant claims suppression of evidence. Appellant's defense was self-defense and he insists the State's theory of the case was that the deceased who was armed with a .45 caliber pistol was shot seven times and his weapon did not leave the holster. The State does not agree that this was its theory.

Officer Wright testified that when he arrived on the scene he found the deceased's weapon in its holster and though one shell was missing and the pistol ap-

peared to have been fired he could not tell when. John Eleby, an employee of the lounge in question, apprehended the appellant following the shooting and while subduing him observed the badly wounded deceased trying to remove his pistol from the holster. Eleby called for someone to take the gun from the deceased. He was unsure whether in the process the pistol was discharged. He related that the first he knew of any shot being fired was when someone complained about a bullet hole in his car, and that there was a bullet hole in a red car parked near the lounge. He did not know how or when the bullet hole was made or whether any slug was recovered.

During Officer Wright's testimony it was shown the automobile was a 1968 Chevrolet bearing license number GXX 840 but Wright denied examining the car as he left the "follow up" investigation to other officers.

One of appellant's companions on the evening in question testified that shortly after the struggle between the parties began the deceased attempted to pull his pistol from his holster and that it discharged striking a nearby car. He related he also read about the bullet hole in a newspaper account of the incident.

Appellant's counsel argued to the jury that appellant had acted in self-defense and the bullet hole in the Chevrolet was proof that the deceased had fired at him.

It is difficult to determine from the briefs and argument what evidence appellant claims was suppressed. We do find the appellant's assertion or assumption that "tests were run, that said bullet was extracted from said vehicle and said bullet was known to be of a .45 caliber." There is no evidence to support this claim. If there was a constitutional duty of the prosecutor to disclose it is not reflected by the record before us. If it be appellant's contention that the State failed to correct false testimony he does not point out what testimony was known to be false.

The judgment is affirmed.